P & D Service Co., Inc. *vs.* Zoning Board of Appeals of
Dedham & another.

Norfolk.   October 6, 1970. — March 19, 1971.

Present: Spalding, Cutter, Spiegel, Reardon, & Quirico, JJ.

*Building Permit. Sewer. Regulation. Public Health. Equity Pleading
and Practice,* Master: exceptions to report, rulings of law; Amend-
ment. *Zoning,* Board of appeals: appeal to board, jurisdiction; Appeal
to Superior Court. *Equity Jurisdiction,* Zoning. *Jurisdiction,* Zoning.
*Superior Court,* Jurisdiction. *Words,* "Sewer entrance permit."

Exceptions were properly sustained to rulings of law by a master in a suit
in equity. [97–98]

An exception to a finding of fact in the report of a master in a suit in
equity in which no evidence was reported was properly overruled.
[98]

Both the General Laws and the State Sanitary Code adopted pursuant to
G. L. c. 111 permit each municipality to establish and apply its own
practice and procedure for handling the details of determining and
granting access from private property to common sewers. [102]

Following a revocation by the building inspector of a town of permits
issued by him for the construction of buildings on land accessible to
a common sewer and an appeal by the landowner to the zoning board
of appeals, a decision by it affirming the revocation on the ground
that the landowner had not complied with a regulation of the State
Sanitary Code that "No building or plumbing permit shall be issued
until a Sewer Entrance Permit or Disposal Works Construction Per-
mit has first been obtained" was erroneous where it appeared that
such regulation was a part of an article of the code applicable only to
individual sewage disposal systems, that, preliminary to an applica-
tion to the sewer commissioners to connect completed buildings to
the common sewer, the landowner had complied with the town's es-
tablished procedure by securing from its board of health a certificate
which stated that there was a common sewer available to the land
and granted permission for the issuance of building permits, and by
presenting the certificate to the building inspector prior to issuance
of the permits, and that the certificate, although not entitled "Sewer
Entrance Permit," and the town's established procedure satisfied the
purpose of the regulation. [102–103]

Where it appeared that on the day when building permits were issued for
construction of an asphalt mixing plant and an accessory scale house
there was available to the site thereof a common sewer with a capacity

more than sufficient to serve the infinitesimal needs of the proposed plant, the building inspector of the town could not then have lawfully refused to issue the permits on the ground of insufficiency of the capacity of the common sewer, and his purported revocation of the permits ten days later at the request of the town's sewer commissioners was invalid. [103–104]

Revocation of building permits by the building inspector of a town on a ground having no relation to its zoning by-law or G. L. c. 40A was not appealable to the zoning board of appeals of the town under § 13 and the board had no jurisdiction of the appeal under § 15. [104]

The Superior Court had no jurisdiction under G. L. c. 40A, § 21, to entertain a suit in equity by way of appeal from a decision of the zoning board of appeals of a town based on a ground having no relation to any provision of its zoning by-law or of c. 40A. [104]

On appeal by the plaintiff from the final decree in a suit in equity purportedly under G. L. c. 40A, § 21, by way of appeal from a decision of the zoning board of appeals of a town, where it appeared that the Superior Court had no jurisdiction of the suit but that all parties to the controversy were before the court and all issues had been fully tried and argued and should be resolved in favor of the plaintiff, this court reversed the final decree and remanded the case to the Superior Court in order to afford the plaintiff an opportunity to secure favorable declaratory relief under G. L. c. 231A upon a substituted bill for such relief. [105]

BILL IN EQUITY filed in the Superior Court on April 12, 1968.

The suit was heard by *Taveira, J.,* on a master's report.

*Alfred L. Podolski,* Town Counsel, for the defendants.

*James D. St. Clair* for the plaintiff.

QUIRICO, J. This is a bill in equity under G. L. c. 40A, § 21, inserted by St. 1954, c. 368, § 2, and as amended through St. 1960, c. 365. The proceedings involve two building permits originally issued by the defendant building inspector (inspector) of the town of Dedham who later purported to revoke the permits and whose action was upheld by the defendant zoning board of appeals. The case is before us on appeals by the plaintiff and by each defendant from an interlocutory decree relating to the master's report and from the final decree.

The case was heard in the Superior Court on the basis of (a) a stipulation of the parties as to certain facts, and (b) a master's report of facts found by him. The defendants seasonably filed five objections, which became exceptions,

to portions of the report which they contended were rulings of law and not findings of fact. The contention was correct, and the judge properly entered an interlocutory decree sustaining the exceptions to such rulings and striking them from the report. *Sprague* v. *Rust Master Chem. Corp.* 320 Mass. 668, 677, and cases cited.

The trial judge impliedly overruled a portion of an exception which requested that he strike from the report the statement that "The Town of Dedham had appropriated money for sewer connections for 1967 and 1968." This is a finding of fact. The evidence is not before us, the defendants did not request a report or summary of the evidence relating to this finding, and they did not move for a recommittal of the report to the master. The exception to this finding of fact "violate[s] the elementary rule that exceptions to a master's report cannot avail unless the error is made to appear upon the face of the report itself." *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155. *Chopelas* v. *Chopelas,* 303 Mass. 33, 36. *Leventhal* v. *Jennings,* 311 Mass. 622, 624. *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 678–679. Rule 90 of the Superior Court (1954). The interlocutory decree in thus disposing of the exceptions and confirming the master's report as modified by such disposition was correct and is affirmed.

After confirming the master's report as modified by the sustaining of the several exceptions, it was the duty of the trial judge, and it is now our duty, to see that the final decree is such as the law requires upon the facts stipulated and those found by the master. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm. of Westfield,* 345 Mass. 267, 271. *Lupien* v. *First Fed. Sav. & Loan Assn.* 351 Mass. 311, 314. The facts thus stipulated and found by the master are summarized to the extent necessary for this decision.

On December 4, 1967, the plaintiff filed applications with the inspector for permits to build an asphalt or bituminous mixing plant and an accessory scale house on land described as Lot A, Allied Drive, in Dedham. The applications

were in proper form. On that date the proposed buildings complied with the town's building code, and the proposed uses of the buildings and land were permitted as of right at that location under the town's zoning by-law. The inspector informed the plaintiff's representative that he was required to procure a sewer certificate from the town's board of health before the building permits could be issued. The plaintiff procured from the board of health a certificate stating: "As there is a public sanitary sewer accessible to Lot # A House # Allied Drive (new bld'g) permission is hereby given for a building permit to be granted for the above location." Upon the presentation of this certificate the inspector on December 4, 1967, issued the two building permits for which the plaintiff applied.

Under the town's building code the selectmen appoint the building inspector, and they have the power to discharge him for failure to perform his duties. On December 14, 1967, the inspector, acting at the written request of the selectmen, wrote the plaintiff stating that the two building permits were revoked because the selectmen thought that there might be a problem concerning the capacity of the sewer in that area to handle another particular connection. On that date the normal flow capacity of the public sewer in Allied Drive was 690 gallons a minute and the actual rate of flow in that sewer was then fourteen gallons a minute. The asphalt or bituminous mixing plant would discharge no waste matter into the public sewer. The plant would include one water closet and one lavatory to be used by four employees and no other persons. This use would produce sixty gallons of sewage a day and would require a rate of flow of twenty-eight gallons a minute, and this contribution of sewage would be infinitesimal in relation to the town's public sewer facilities in the area. The selectmen had no reason to be apprehensive of any danger to the town on account of a connection of the proposed building to the common sewer.

The plaintiff seasonably appealed the inspector's revocation of the building permits to the defendant board of ap-

peals. The board held a public hearing on the appeal and on March 25, 1968, it affirmed the inspector's action. It based its decision on the plaintiff's alleged failure to comply with Reg. 2.5 of art. XI of the State Sanitary Code [1] (Sanitary Code) and not on the question raised by the selectmen and the inspector as to the capacity of the sewer in the area to handle another connection. Regulation 2.5 provides that "No building or plumbing permit shall be issued until a Sewer Entrance Permit or Disposal Works Construction Permit has first been obtained."

Article XI of the Sanitary Code is entitled, "Minimum Requirements for the Disposal of Sanitary Sewage in Unsewered Areas." It consists of twenty pages of fine print prescribing in minute detail the specifications and requirements for the licensing, location, construction, use, operation, maintenance and inspection of individual sewage disposal systems. It contains no such provisions with respect to public sewage disposal systems, generally referred to as "common sewers" in applicable statutes. [2] Regulation 1.1 of the article defines forty-five words or groups of words which apply almost exclusively to individual systems. Regulation 2.1 states in part, "No individual sewage disposal system or other means of sewage disposal shall be located, constructed, altered, repaired, or installed where a common sanitary sewer is to be used." Regulation 2.10 states in part, "Individual sewage disposal systems . . . shall not be approved where a common sanitary sewer is accessible . . . and where permission to enter such a sewer can be obtained from the authority having jurisdiction over it."

On December 4, 1967, the town of Dedham had an established procedure for the issuance of building permits, and that procedure was followed in the issuance of the two per-

---

[1] Article XI of the Sanitary Code was originally adopted by the Massachusetts Department of Public Health on January 9, 1962, in the exercise of authority granted it in G. L. c. 111, § 5. By St. 1965, c. 898, §§ 1, 3, that authority was eliminated from § 5 and placed instead in a new § 127A, inserted in c. 111. See G. L. c. 30A for procedural requirements for the adoption of regulations.

[2] See G. L. c. 40, §§ 21 (5) and 21 (6); c. 44, § 7 (10); c. 83, §§ 1, 2, 3,10, 11, 14, 16, 17, 18, 20, 22, 23, 24, and 27.

mits to the plaintiff. The town furnished a printed form of application for permits which included the following instruction: "Note: Before any building is commenced, a statement must be obtained from the Board of Health of the Town of Dedham that either a sewer is available for construction or that said Board of Health has certified a location on the premises, where a cesspool, septic tank and/or leaching fields are to be constructed." The plaintiff obtained a certificate from the board of health to the effect that a public sanitary sewer was available to the lot in question, and presented it to the inspector who thereupon issued the permits.

Under the established practice no further action with respect to the sewer was required until the owner desired to have the new building connected to the common sewer, at which time he would file an "Application for Particular Sewer." A "particular sewer" is the line connecting the building to the common sewer of the municipality. See G. L. c. 83, §§ 3 and 24. In the years 1967 and 1968 the town of Dedham had appropriated money for such connections.

The selectmen served as sewer commissioners for the town by virtue of St. 1933, c. 211, § 1. No "Sewer Entrance Permit" form has ever been known to or issued by the selectmen as sewer commissioners. Whenever the board of health certified that a common sewer was accessible, as it did here, the sewer commissioners took no action in the matter until they received an application to connect the premises to the common sewer. There was no finding of any town by-law, or of any rule or regulation of any town board or official, requiring a "Sewer Entrance Permit" to be procured prior to obtaining a building permit.

The question presented for our decision in this case is whether Reg. 2.5 to the effect that "[n]o building or plumbing permit shall be issued until a Sewer Entrance Permit or Disposal Works Construction Permit has first been obtained" required the plaintiff to do anything more than what it did with reference to the sewer as a condition prece-

dent to obtaining valid building permits for the asphalt plant and scale house. For the several reasons hereinafter discussed, we hold that it did not.

1. It is clear from a reading of art. XI of the Sanitary Code in its entirety and from its title that it was intended to regulate in detail only with respect to individual sewage disposal systems, and that the detailed regulations were intended to apply only to property which did not have access to a common sanitary sewer. Where such a common sewer was accessible, art. XI did not attempt to prescribe the exact procedure by which buildings on private property would be connected to the common sewer. That subject is covered in general by G. L. c. 83, §§ 3 and 24. The words "Sewer Entrance Permit" are used only in Reg. 2.5 quoted above. They are not included in the list of forty-five words and phrases which are defined by Reg. 1.1 of art. XI. The suggested forms which are included in art. XI apply only to individual sewage disposal systems, and they do not include a form for a sewer entrance permit or application therefor. Thus both the General Laws and the Sanitary Code permitted each municipality to establish and apply its own practice and procedure for handling the details of determining and granting access from private property to common sewers.

2. The town of Dedham established a procedure which has been described above. It included the instruction quoted from the printed form of application for a building permit. As to property such as that of the plaintiff which was accessible to a common sewer the only requirement as to sewers which had to be met before a building permit could be issued was the obtaining of a certificate from the board of health that "a sewer is available for construction." The plaintiff complied with this requirement. Although this certificate was not entitled a "Sewer Entrance Permit" we hold that it satisfied the basic requirement of Reg. 2.5. This regulation was concerned primarily with property not accessible to a common sewer; and it seems to have inserted the reference to a "Sewer Entrance Permit" as a means of

identifying the property to which the detailed regulations on individual sewage disposal systems would not apply. We hold that the town's established procedure which was followed in this case was sufficient for the purpose intended by the regulation. The decision of the defendant board of appeals that the plaintiff failed to comply with Reg. 2.5 and that therefore the building permits were illegally issued and were subject to revocation was erroneous.

The decision in the case of *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.* 344 Mass. 281, upon which the defendants appear to place great reliance does not apply on the facts of the case before us. That decision involved a permit issued before art. XI of the Sanitary Code was adopted, and it is based on a provision in the town's building code which required that (p. 284) "[u]pon application for a building permit, the building inspector must be shown a sewerage disposal permit from the board of health." The record before us shows no such by-law, rule or regulation in effect in the town of Dedham, and the established procedure required no such permit from the board of health as a condition precedent to a building permit.

3. It is clear from the master's findings that there was a common sewer accessible to the plaintiff's property, and that its capacity was more than sufficient to serve the proposed plant. The apprehension of the selectmen as sewer commissioners to the contrary was without foundation in fact. In *Clark* v. *Board of Water & Sewer Commrs. of Norwood*, 353 Mass. 708, 711, we held that "[r]easonable sewer capacity being shown to serve the petitioners' buildings, they had a right to the connections [to the common sewer]. This was a present legal right and the writ of mandamus could not have been refused as matter of discretion." Applying that rule to the present case we hold that on December 4, 1967, the inspector could not lawfully have refused to issue the building permits to the plaintiff on the ground of any insufficiency in the capacity of the common sewers. We hold further that having issued the permits to the plaintiff on December 4, 1967, the inspector had no right to revoke

them on December 14, 1967, on that ground and that his action in purporting to do so was invalid. The fact that the selectmen as sewer commissioners requested him to revoke the permits on that ground does not make valid his otherwise invalid attempt to revoke them.

To this point in this decision we have considered and discussed the case on the issues argued by the parties based on their assumption that the case was properly before us. However, we now feel compelled to hold that the case is not properly before us as an appeal under G. L. c. 40A, § 21, for the following reasons.

General Laws c. 40A, § 13, as amended through St. 1963, c. 207, § 1, provides that "[a]n appeal to the [zoning] board of appeals . . . may be taken by any person aggrieved . . . by any order or decision of the inspector of buildings or other administrative official in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder." In this case the inspector did not act or purport to act under any provision of c. 40A or of any zoning by-law in revoking the plaintiff's building permits, and therefore his action was not appealable to the zoning board of appeals.

General Laws c. 40A, § 15, which prescribes the powers of a zoning board of appeals with reference to appeals and original applications coming before it limits its powers to matters arising under zoning ordinances and by-laws. Neither the question of the adequacy of the town's common sewer nor the question of the applicability of, or compliance with, the Sanitary Code arose under the town's zoning by-law. Therefore those questions were not properly before the zoning board of appeals, and that board had no jurisdiction with reference thereto.

It follows further from what we have said above that the plaintiff "could not properly have brought this bill under c. 40A, § 21, . . . because . . . that relates only to appeals from decisions under zoning ordinances and by-laws"; and therefore "the Superior Court had no jurisdiction of the appeal." *Rice* v. *Board of Appeals of Dennis*, 342 Mass. 499, 501–502. *Reynolds* v. *Board of Appeal of Springfield*,

335 Mass. 464, 465. *Bradshaw* v. *Board of Appeals of Sudbury,* 346 Mass. 558, 560. *O'Donnell* v. *Board of Appeals of Billerica,* 349 Mass. 324, 327. *Sandberg* v. *Board of Appeals of Taunton,* 349 Mass. 769. See *Church* v. *Building Inspector of Natick,* 343 Mass. 266, 268–269.

This court could now properly order the plaintiff's bill to be dismissed for want of jurisdiction. However, since all parties to the controversy have appeared and all issues have been fully tried and argued, we think it appropriate to afford the plaintiff an opportunity to amend by substituting a bill for declaratory relief under G. L. c. 231A. Accordingly, the final decree is reversed and the case is remanded to the Superior Court for that purpose. If the plaintiff shall file such a motion to amend in proper form in that court within thirty days after the date of rescript, such motion shall be allowed and a final decree entered which will order, adjudge and decree (a) that the two building permits issued by the inspector to the plaintiff on December 4, 1967, were valid, (b) that the action taken by the inspector on December 14, 1967, purporting to revoke the two building permits was invalid, and (c) that the zoning board of appeals had no jurisdiction of the appeal and its decision dated March 25, 1968, purporting to affirm the inspector's attempted revocation of the two building permits was a nullity.

If the plaintiff does not file a proper motion to amend as authorized above and in the time limited therefor, a final decree is to be entered dismissing its bill.

*So ordered.*