WARREN CARSTENSEN vs. ZONING BOARD OF APPEALS
OF CAMBRIDGE & others[1]
(and a companion case[2]).

Middlesex.　October 15, 1980. — February 13, 1981.

Present: BROWN, ROSE, & PERRETTA, JJ.

*Zoning*, Appeal to board of appeals, Timeliness of appeal, Building permit, Amendment of by-law or ordinance, State Building Code. *State Building Code.*

An appeal from a decision of a zoning board of appeals was deemed to be timely filed even though it was filed after the expiration of the thirty-day period required by G. L. c. 40A, § 15, where the expiration date fell while a state of emergency was in effect during which virtually all business and government was suspended for a six-day period and where the appeal was filed within thirty days as calculated by excluding those six days.  [351-352]

A building permit issued after the publication of notice of a hearing on an amendment to a city's zoning ordinance was not subject to the amendment considered at the hearing where the city council failed to act on the amendment within ninety days of the hearing.  [352-354]

A building permit having a defect when issued which was not cured until after notice of a hearing on an amendment to the city's zoning ordinance was not subject to the subsequently enacted amendment where the builder, when notified of the defect, promptly submitted revised plans which in all respects complied with the ordinance in effect at the time the permit was issued.  [354-356]

On appeal to the Land Court pursuant to G. L. c. 40A, § 17, from a decision of a zoning board of appeals granting three building permits, the court had no jurisdiction with respect to alleged building code violations in the permit application and thus properly excluded any evidence in relation thereto.  [356-358]

[1] Gail Warren, John Eliassen and Richard Lubov; and the Planning Board of Cambridge, intervener.

[2] Planning Board of Cambridge, intervener, *vs.* Zoning Board of Appeals of Cambridge & others.

TWO CIVIL ACTIONS commenced in the Land Court on May 22, 1978, and in the Superior Court on May 24, 1978, respectively.

Upon transfer of the second case to the Land Court, the cases were heard by *Sullivan, J.*

*Douglas A. Randall* for Planning Board of Cambridge.

*Philip M. Cronin* for Warren Carstensen.

BROWN, J. This appeal is from two final judgments entered in the Land Court. In one the court affirmed a decision of the zoning board of appeals of Cambridge (zoning board) which denied an appeal from the granting of three building permits by the superintendent of buildings of Cambridge. In a companion case, consolidated with the first at trial, the Land Court annulled a decision of the zoning board revoking a fourth building permit which had been granted by the superintendent. The Cambridge planning board (planning board), intervening in both cases at trial, brought this appeal.

The findings of fact of the Land Court were largely undisputed. On July 5, 1977, due to concern over construction by the Massachusetts Bay Transportation Authority, the Cambridge planning board filed a petition with the Cambridge city council requesting it to amend its zoning ordinance. The amendment, if adopted would have placed a temporary moratorium on development in areas of Cambridge affected by the construction.[3] The planning board held a public hearing on the petition on August 2, 1977,[4] and recommended favorable action on the petition to the city council on August 16, 1977. The city council took no action on the petition. On November 10, 1977, Carstensen applied for and received from the superintendent of buildings permits for the construction of four commercial "mini-warehouses." These buildings complied with the zoning ordinances in effect at that time. Following submission of a

---

[3] The moratorium would not have affected renovation of existing facilities or additions thereto not exceeding 75,000 square feet.

[4] The first notice of the hearing was published on July 14, 1977.

new petition for a moratorium, the planning board published notice, on December 1, 1977, of a second hearing, which was held on January 3, 1978. The board sent a second favorable recommendation to the city council, which adopted the amendment imposing a moratorium on new construction on March 13, 1978.[5]

Meanwhile, on January 3, 1978, various neighbors of the proposed warehouse sites had written the superintendent contending that Carstensen's plans violated provisions of the zoning ordinance. After consideration of the matter, the superintendent found that one of the warehouses (Building A) projected into the neighboring "Residence C-1" zone, in which such a structure was prohibited. The superintendent directed Carstensen to submit revised plans which would comply with the ordinance. The revised plans were submitted eight days later and the superintendent took no further action. The neighbors were dissatisfied with the superintendent's actions[6] and appealed to the zoning board on February 15, 1978. Their contention was that all the permits were defective when issued and the defects were not cured until after the development moratorium had taken effect. The zoning board accepted this argument only as it pertained to Building A and instructed the superintendent to revoke that permit. Otherwise, it denied the neighbors' appeal. Carstensen appealed the revocation of Building A's permit to the Land Court,[7] and the neighbors appealed the remainder of the decision to the Superior Court. On Carstensen's motion, the cases were consolidated in the Land Court. The planning board intervened in both suits. The Land Court, after determining that the neighbors' ap-

---

[5] Apparently, the moratorium was to be effective only until April 7, 1978.

[6] The neighbors were notified of the superintendent's action by letter dated January 10, 1978.

[7] General Laws c. 40A, § 17 (as appearing in St. 1975, c. 808, § 3), provided that appeals may be taken to the Superior Court or the Land Court. The jurisdiction of the Land Court to hear such appeals was withdrawn by St. 1978, c. 478, § 32.

peal to the zoning board was seasonably filed, ruled that the decision to revoke the permit for Building A was wrong as matter of law. The court otherwise upheld the decision of the zoning board. The planning board was the only party to file a notice of appeal.

1. The initial question for our consideration is whether the neighbors' appeal was timely filed. General Laws c. 40A, § 15 (as appearing in St. 1975, c. 808, § 3), provides that "[a]ny appeal under section eight to a permit granting authority shall be taken within thirty days from the date of the order or decision which is being appealed." The appeal period for this decision therefore commenced on January 10, 1978, the date on which the superintendent replied to the neighbors' request for enforcement of the zoning ordinance, and expired on February 9, 1978. The neighbors did not file their appeal until February 15, 1978, after the expiration of the thirty-day limit. Normally, strict compliance with the rules for taking appeals is necessary and the failure to pursue such a statutory remedy within the time frame set forth deprives the appeals board of jurisdiction to review actions concerning permits. *Cheney* v. *Dover*, 205 Mass. 501, 503 (1910). *DelGrosso* v. *Board of Appeals of Revere*, 330 Mass. 29, 32 (1953). *Kolodny* v. *Board of Appeals of Brookline*, 346 Mass. 285, 288 (1963). *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 552 (1966). However, the expiration date fell during the state of emergency declared on February 7, 1978, because of the blizzard of February 6-7, 1978. See Executive Order No. 142, February 9, 1978.[8] By excluding each day that the state of emergency existed in computing

---

[8] The executive order issued pursuant to St. 1950, c. 639, § 5, as amended by St. 1968, c. 579, § 2, declaring the state of emergency, suspended virtually all business and government between February 7, 1978, and February 12, 1978. This is to be read in conjunction with St. 1950, c. 639, § 8A, which provides that any general law, ordinance or by-law inconsistent with any promulgation issued under the act "shall be inoperative while such order or . . . regulation is in effect." No question is raised as to the validity of the executive order.

the length of time for appeal, the Land Court determined that the appeals were timely filed. We agree.

2. The second question is whether the permits issued on November 10, 1977, after the hearing on the first petition for a development moratorium, but prior to the first published (December 1, 1977) notice of the hearing on the second petition, were subject to the development moratorium adopted in March, 1978. The Land Court ruled that they were not subject to the moratorium because they were granted prior to the first notice of the planning board hearing immediately preceding the action by the city council. The planning board argues, as it did in the Land Court, that, if a proposed zoning amendment is eventually adopted despite initial inaction by the city council, it applies to any permits issued after the first official public mention of the amendment.

General Laws c. 40A, § 5 (as appearing in St. 1975, c. 808, § 3), provides that zoning ordinances or by-laws can be adopted only after a public hearing at which interested persons are given the opportunity to be heard and requires that notice of the time and place of the hearing be published once in each of two successive weeks, the first publication to be not less than fourteen days before the hearing. Any permit issued after the first publication of notice of the hearing is subject to the ordinance or by-law considered at the hearing. G. L. c. 40A, § 6 (as appearing in St. 1975, c. 808, § 3). See *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 6-7 (1961) (This and the following cases deal with G. L. c. 40A, § 11, as appearing in St. 1954, c. 368, § 2, the predecessor of the present c. 40A, § 6); *Ouellette* v. *Building Insp. of Quincy*, 362 Mass. 272, 278-279 (1972); *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 202 (1974) (Smith I); *Smith* v. *Building Commr. of Brookline*, 367 Mass. 765, 770-771 (1975) (Smith II); *Collura* v. *Arlington*, 367 Mass. 881, 888 (1975).[9]

---

[9] See also *Alexander* v. *Building Inspector of Provincetown*, 350 Mass. 370, 375-376 (1966); *Papalia* v. *Inspector of Bldgs. of Watertown*, 351

In the situation before us, however, the city council failed to act on the original planning board recommendation within ninety days of the first hearing. General Laws c. 40A, § 5, provides that, if the city council fails to vote to adopt any proposed ordinance within ninety days after the public hearing, "no action shall be taken . . . until after a subsequent public hearing is held"[10] and the notice procedure repeated.[11] A purpose of this provision was to "ensure that the current views of local residents [would] be taken into account by the council when it considers a proposed ordinance." *Gricus* v. *Superintendent & Inspector of Bldgs. of Cambridge*, 345 Mass. 687, 691 (1963).

Prior to the recodification of The Zoning Enabling Act by St. 1975, c. 808, § 3, G. L. c. 40A, § 11, provided that a permit issued after publication of the first notice would not be subject to a subsequently enacted zoning ordinance if the procedures for adoption were accompanied by unreasonable delay. G. L. c. 40A, § 11, as in effect prior to St. 1975, c. 808, § 3. See *Gricus* v. *Superintendent & Inspector of Bldgs. of Cambridge*, 345 Mass. at 690-691 (ordinance invalid because adopted more than five years after public hearing [prior to enactment of St. 1961, c. 151]); *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. at 279-280 n.12 & 280 (thirteen months would constitute unnecessary delay). See also *Collura* v. *Arlington*, 367 Mass. at 888.[12]

This provision was dropped when § 11 was rewritten in the form of the present § 6 in the 1975 recodification. In

Mass. 176 (1966); *Murphy* v. *Selectmen of Manchester*, 1 Mass. App. Ct. 407 (1973).

[10] The requisite time period within which a town meeting must adopt an amendment is within six months of the public hearing. G. L. c. 40A, § 5.

[11] This provision was originally adopted as an amendment to G. L. c. 40A, § 6 (as appearing in St. 1959, c. 317, § 1), by St. 1961, c. 151. The proposed bill was entitled: "An Act requiring prompt action on zoning amendments in cities." See 1961 House Doc. No. 1051.

[12] See also 1972 House Doc. No. 5009, Report of the Department of Community Affairs Relative to the Proposed Changes and Additions to The Zoning Enabling Act, at 36.

the absence of indication to the contrary, we are of the opinion that the provision was deleted, not in order to make zoning changes applicable following their first public mention regardless of the length of the interval until subsequent adoption, but rather because the provision was unnecessary in light of the subsequently adopted ninety-day requirement for enactment of ordinances. Proposed ordinances under consideration by a city council may undergo substantial changes or be abandoned entirely, see *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. at 279, or be adopted several years after first being proposed. See *Gricus* v. *Superintendent & Inspector of Bldgs. of Cambridge*, 345 Mass. at 690-691. Thus, in the absence of a specifically delineated time period, the interpretation urged by the planning board could result in long periods of uncertainty when there is indefinite municipal inaction. We therefore hold that a permit issued after the first publication of notice for a public hearing is subject only to zoning ordinances adopted by the city council within ninety days of that hearing.[13]

Because the city council failed to act on the first petition within ninety days of the public hearing, Carstensen received his permits prior to the first notice of the public hearing within ninety days of which the city council adopted the ordinance. Therefore, Carstensen's permits are not subject to the subsequently enacted development moratorium.

3. The planning board next argues, however, that the permit for Building A was subject to the subsequently enacted development moratorium because the permit was defective when issued and the defect was not cured until after the first notice of the second planning board hearing. The Land Court held that the amendments to the original plans for Building A which corrected an encroachment into the neighboring "Residence C-1" zone "related back" to the date of the original application and thus cured the defect

---

[13] In the case of an amendment to the zoning by-law of a town, the requisite time period is six months. See G. L. c. 40A, § 5, and note 10, *supra*.

retroactively. In so holding, the Land Court relied on *Smith II*, 367 Mass. at 771-774.[14] In *Smith I*, 366 Mass. at 198, 200-202, the Supreme Judicial Court invalidated a permit which did not conform to new provisions of the town zoning by-law, some of which were in effect and for others of which notice of hearing had been given at the time the permit was issued. The effect of the decision was to require the Brookline board of appeals to review the permit in order to bring the building into compliance with the new provisions of the zoning ordinance. See *Smith II*, 367 Mass. at 766. Subsequent to the *Smith I* decision, Brookline enacted additional amendments to the zoning ordinances, notices of which were published after the issuance of the building permit. The issue in *Smith II* was whether the permit, defective when issued, could be modified retroactively or whether a new permit, subject to these subsequently enacted zoning amendments, had to be applied for. *Id.* at 769. The court, in holding that the subsequently enacted amendments did not apply, stated:

"[T]he situation presented here falls between the lines of what may be considered the saving clause of § 11. The plaintiff's position is that, since the permit granted on May 26, 1972, has been determined to be defective by this court's decision in *Smith I*, that permit is null and void and that consequently there is no outstanding permit. Thus, the plaintiff submits, the owner is entitled to no protection from subsequent zoning by-law amendments and the owner must apply for a new permit subject to the currently existing zoning by-law as amended.

---

[14] See also State Building Code, 780 Code Mass. Regs. § 113.8 (1979), which provides that: "Subject to the limitations of Section 113.9, amendments or revisions to a plan or other records accompanying the same may not be made until the proposed changes have been filed with and approved by the building official; and such approved amendments shall be deemed part of the original application and shall be filed therewith."

"We are not persuaded by this line of reasoning for it rests on the assumption that the only course open to the board following our decision in *Smith I* was to revoke the May 26, 1972, permit as illegally granted *ab initio*. On the contrary, the decision in *Smith I* did not compel ex post facto revocation of the permit but only held that the project must conform to the 1971 amendments to the zoning by-law." *Id.* at 771.

Thus, a zoning board or superintendent of buildings may modify a permit if the builder "demonstrate[s] a good faith effort to comply with the applicable law" and the defects are remediable. *Id.* at 773 n.9.

The record demonstrates such a good faith effort on the part of Carstensen. Once notified of the permit's defects, he promptly submitted revised plans which in all respects complied with the zoning ordinance in effect at the time the permits were issued. Therefore, we concur with the Land Court that the defective permit for Building A could be cured retroactively.[15]

4. Finally, the planning board contends that the Land Court erred in excluding evidence of State Building Code violations which allegedly appeared in Carstensen's original permit application. The proceedings in the Land Court were the first indication that any building code violations existed. Indeed, the only matters brought to the attention of the building inspector or the zoning board concerned violations of the zoning ordinance.

As noted by the Land Court, the building code and zoning laws have different purposes and procedures. "Whereas the main purpose of zoning is to stabilize the use of property and to protect an area from deleterious uses [citations omit-

---

[15] In accord, *Soble Constr. Co.* v. *Zoning Hearing Bd. of E. Strouds-burg*, 16 Pa. Commw. Ct. 599, 608-609 (1974); *Juanita Bay Valley Community Assn.* v. *Kirkland*, 9 Wash. App. 59, 82-84 (1973). But see *Eastlake Community Council* v. *Roanoke Associates*, 82 Wash. 2d 475, 483 (1973), cited in *Smith II* at 771.

ted], a building code 'relates to the safety and structure of buildings.'" *Enos* v. *Brockton*, 354 Mass. 278, 280-281, quoting from *Norcross* v. *Board of Appeals of the Bldg. Dept. of Boston*, 255 Mass. 177, 182 (1926). See *O'Donnell* v. *Board of Appeals of Billerica*, 349 Mass. 324, 327 (1965). Each has its own appellate procedure. Whoever is aggrieved under the State Building Code may appeal directly to the State Building Code Appeals Board or to a local or regional appeals board. G. L. c. 23B, § 23 (inserted by St. 1972, c. 802, § 1). 780 Code Mass. Regs. § 126.1 (1979).[16] A further appeal may be taken from the State Building Code Appeals Board pursuant to G. L. c. 30A, § 14. 780 Code Mass. Regs. § 126.6 (1979).

Persons aggrieved by violations of zoning ordinances may appeal to the local zoning board of appeals, G. L. c. 40A, §§ 8 & 14, and thereafter to the courts pursuant to G. L. c. 40A, § 17. See *Neuhaus* v. *Building Inspector of Marlborough, ante* 230 (1981). However, the zoning board of appeals ordinarily has no jurisdiction over building code matters since appeals to that body are limited solely to review decisions under *zoning ordinances and by-laws.* G. L. c. 40A, § 14. See *Rice* v. *Board of Appeals of Dennis*, 342 Mass. 499, 501-502 (1961); *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. at 276. The questions of compliance with the State Building Code did not arise under the zoning ordinance, compare *P & D Serv. Co.* v. *Zoning Bd. of Appeals of Dedham*, 359 Mass. 96, 104 (1971) (State Sanitary Code), and were "in no sense incidental to giving complete relief in the cause over which the court did have jurisdiction," i.e., violations of the zoning ordinance. *Reynolds* v. *Board of Appeals of Springfield*, 335 Mass. 464, 467 (1957).

Therefore, since the appropriate procedures were not adhered to, the Land Court in this appeal pursuant to G. L.

---

[16] We do not deal here with matters under the Anti-Snob Zoning Act. See *Board of Appeals of No. Andover* v. *Housing Appeals Comm.*, 4 Mass. App. Ct. 676, 681 (1976) (dissenting opinion of Goodman, J., joined by Brown, J.).

c. 40A, § 17, had no jurisdiction concerning building code violations and thus correctly excluded any evidence in relation thereto. See *Rice* v. *Board of Appeals of Dennis*, 342 Mass. at 500, 501-502; *Sandberg* v. *Board of Appeals of Taunton*, 349 Mass. 769 (1965); *P & D Serv. Co.* v. *Zoning Bd. of Appeals of Dedham*, 359 Mass. at 104-105.[17]

*Judgments affirmed.*

---

[17] Although these decisions all antedate the adoption of a State Building Code, see G. L. c. 23B, § 16 (inserted by St. 1972, c. 802, § 1), and the recodification of The Zoning Enabling Act, they dealt with analogous provisions of the prior Zoning Enabling Act. See G. L. c. 40A, § 21 (as in effect prior to St. 1975, c. 808, § 3).