## H. James Balcam & another[1] v. Town of Hingham & another.[2]

No. 94-P-1343.

Plymouth. November 16, 1995. - September 5, 1996.

Present: Brown, Laurence, & Lenk, JJ.

*Jurisdiction,* Zoning. *Zoning,* Wetlands, By-law, Appeal, Building permit, Building inspector, Exhaustion of administrative remedies, Notice. *Real Property,* Conservation restriction. *Administrative Law,* Exhaustion of remedies.

A Superior Court judge erred in granting plaintiffs' request for a preliminary injunctive order requiring a building commissioner to issue an occupancy permit for the plaintiffs' building, where the plaintiffs had neither exhausted their administrative remedies nor appealed from adverse decisions of the conservation commission and building commissioner with respect to the plaintiffs' violations of the conservation and zoning by-laws and had therefore waived their right to seek judicial review [262-267]; moreover, the plaintiffs had not demonstrated a likelihood of success on the merits where they did not demonstrate their entitlement to the occupancy permit [267-268].

Civil action commenced in the Superior Court Department on April 23, 1993.

A motion for preliminary injunctive relief was heard by *John J. O'Brien, J.*

*Michael F.X. Dolan, Jr.,* for the defendants.

*Earle C. Cooley* for the plaintiffs.

Lenk, J. The defendants appeal from a Superior Court order granting the plaintiffs' request for a mandatory preliminary injunction. The defendants appealed to a single justice of the Appeals Court pursuant to G. L. c. 231, § 118, par. 1, and Mass.R.A.P. 6(a), 378 Mass. 930 (1979), who stayed the preliminary injunction pending appeal to a panel of this court.

---

[1] Bette Jane Balcam.

[2] Donald G. Robbins, Building Commissioner.

We now review the Superior Court judge's decision pursuant to c. 231, § 118, par. 2, under an abuse of discretion standard, *Biotti* v. *Selectmen of Manchester,* 25 Mass. App. Ct. 637, 640 (1988), subjecting the judge's conclusions of law to "broad review and revers[ing] if incorrect." *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 616 (1980). Because the judge's order was based solely on documentary evidence, we are free to "draw our own conclusions from the record." *Ibid.*[3] The defendants argue that the Superior Court judge was without subject matter jurisdiction to issue injunctive relief. We agree, and vacate the preliminary injunction.

The plaintiffs purchased a lot adjacent to their Hingham home in 1978. Over the course of about ten years, from the early 1980's to 1991, the plaintiffs constructed a carriage house on the lot, apparently with the intention of using it as a rental property. During the early part of the construction, from May 1983 to June 1985, the plaintiffs successfully negotiated resolution of the town conservation commission's opposition to their building a septic system on the lot, which is composed largely of wetlands. The plaintiffs obtained two building permits, one at the beginning of the project, in the early 1980's, and a second permit in July 1991, for completion of the work. However, when it came time for the plaintiffs to obtain the building commissioner's final approval[4] of the completed renovations, and the occupancy permit required to use the building for residential purposes, the building commissioner refused, informing the plaintiffs that they were in violation of two town by-laws, and that they would need to resolve these violations before he could take the ac-

---

[3]While we are aware of the standard articulated in *Westinghouse Bdcst. Co., Inc.* v. *New England Patriots Football Club, Inc.,* 10 Mass. App. Ct. 70, 75 (1980) ("an appellate court 'will not reverse if there is a supportable legal basis for the [trial] court's action even if, on final analysis, it may prove to be mistaken' "), we can find no arguable legal basis for the preliminary injunction.

[4]The plaintiffs requested the building commissioner to "execute" the building permit, to indicate his approval of the completion of the work as being in substantial conformance with the plans and specifications submitted with the building permit application. Evidently, an occupancy permit cannot issue until the building permit has been thus executed.

tions requested.[5] Additionally, he informed them that a number of sign-offs from other town officials were required before he could act. The specific by-law violations are (1) the plaintiffs' building comes within ten feet of the wetlands on their property, when the wetlands by-law requires a 50-foot setback; and (2) the lot surrounding the new building is smaller than the 40,000 square feet (less wetlands) required by the zoning by-law.

Without pursuing the proper avenues of appeal with respect to the zoning and conservation by-law violations, the plaintiffs instead sought a declaratory judgment pursuant to G. L. c. 231A, ordering the building commissioner to issue the occupancy permit. The judge granted the plaintiffs a mandatory preliminary injunction, ordering the building commissioner to issue the plaintiffs an occupancy permit pending completion of a full trial on the merits. However, the judge failed to address the threshold jurisdictional issue raised by the defendants, finding instead that the plaintiffs had shown a substantial likelihood of success on the merits.[6] It was error for the judge to reach the merits of the case without first

---

[5]The building commissioner apparently made an error in issuing the second building permit (in July, 1991) without first consulting the conservation commission. His explanation for the oversight is that he was unaware of any outstanding wetlands issues at the time. It was not until the conservation officer informed him in August, 1991, that plaintiffs were building a deck within the wetlands buffer zone, that the building commissioner became aware of the wetlands by-law violation.

[6]The judge appears to have focused his attention on the question of whether, as defendants maintain, they learned only late in the life of plaintiffs' construction project that their carriage house was intended for residential use, or whether, as plaintiffs maintain, the building commissioner and the conservation commission knew it was intended for residential use from the outset. The judge agreed with the plaintiffs on this point, finding it incredible (as do we) that defendants would not have known the building was intended for residential use beginning in the earliest days of the project, in May 1983, when plaintiffs applied to the conservation commission for permission to construct their septic system. But we can discern no legal relevance to this dispute over what the defendants knew, and when they knew it. The conservation by-law requires a 50-foot setback from wetlands for residential structures, and a 35-foot setback for garages. The defendants maintain (and plaintiffs have made no contrary assertion), that plaintiffs' building is set back only 10 feet from the wetlands. It thus violates the by-law regardless of whether it is a residence or a garage. The record does not indicate how far back from the wetlands the structure would be without the deck, which was constructed in July-August, 1991. The conservation officer's observation of the deck construction, and its

making a ruling of law on the jurisdictional issue, which we find dispositive, and now discuss.

Before they could demonstrate entitlement to final approval of the building permit, and then to the occupancy permit they require, the plaintiffs would first have to comply with, or obtain waivers or variances from, the town zoning and conservation by-laws. To do so, the plaintiffs needed to pursue two independent avenues of appeal.[7] As each has time limits for appeal which have long since expired, the plaintiffs have waived their right to seek judicial review.

intrusion in the wetlands buffer zone, triggered the building commissioner's refusal to issue the occupancy permit.

[7]The defendants suggest a third avenue of appeal, to the State Building Code Appeals Board, pursuant to G. L. c. 143, § 100. However, the Building Code Appeals Board would not have jurisdiction to hear such an appeal because no violation of the building code has been alleged. Section 100 does not give the Building Code Appeals Board jurisdiction to hear appeals of alleged conservation or zoning by-law violations.

Paragraph two of c. 143, § 100, provides in relevant part, "Whoever is aggrieved by an interpretation, order, requirement, direction or failure to act by any . . . local agency or any person . . . charged with the administration or enforcement of the state building code or any of its rules and regulations . . . may . . . appeal from such interpretation, order, requirement, direction, or failure to act to the appeals board."

Paragraph nine of c. 143, § 100, as inserted by St. 1984, c. 348, § 10, provides in relevant part, "The appeals board may grant a variance from any provision of this code . . . may determine the suitability of alternate materials and methods of construction, and may provide reasonable interpretations of the provisions of this code . . . ." See *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 354 (1992). Cf. *Carstensen* v. *Zoning Bd. of Appeals of Cambridge*, 11 Mass. App. Ct. 348, 357-358 (1981). "[T]he building code and zoning laws have different purposes and procedures. . . . Each has its own appellate procedure. Whoever is aggrieved under the State Building Code may appeal directly to the State Building Code Appeals Board. . . . Persons aggrieved by violations of zoning ordinances may appeal to the local zoning board of appeals, G. L. c. 40A, §§ 8 & [15], and thereafter to the courts pursuant to G. L. c. 40A, § 17." *Ibid.* (holding that the Land Court [which then had jurisdiction to hear appeals under G. L. c. 40A] had no jurisdiction to hear argument that building permit should be revoked because of building code violations).

Plaintiffs were equally in error when, in their complaint, they invoked jurisdiction under G. L. c. 143, § 59, as amended through St. 1972, c. 802, § 40. Section 59 provides jurisdiction to the courts to enforce the state building code "upon the application of the commissioner, an inspector or local inspector." No jurisdiction is provided "upon the application of" aggrieved parties such as plaintiffs in the instant case.

The plaintiffs applied to the conservation commission (and were denied)[8] a waiver from the setback requirements of the wetlands by-law. The judicial remedy afforded the plaintiffs is an appeal from the commission's decision by an action in the nature of certiorari under G. L. c. 249, § 4. *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 15-16 (1979). The deadline for filing such an action was 60 days from the denial of the waiver. Nothing before us suggests that the plaintiffs ever appealed the commission's decision by bringing an action in the nature of certiorari and, accordingly, the plaintiffs have waived their judicial remedy with respect to the wetlands by-law violation. The plaintiffs argue, however, that, after the conservation commission participated in and signed off on a 1985 final order of conditions issued by the Department of Environmental Quality Engineering (now Department of Environmental Protection, DEP), which allowed the plaintiffs to construct their septic system in the property's wetlands, they were exempt from any further interference from the conservation commission. Thus, the plaintiffs argue, if they complied with the DEP final order of conditions and its companion agreement and stipulation by refraining from any "further filling or altering of the wetlands" on the property, the conservation commission and the building commissioner were effectively estopped from asserting any other restrictions grounded in either State law or local by-laws. However, there is no such law of estoppel in the Commonwealth, and there is nothing in the order or the agreement that would persuade us otherwise.[9] See *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162-163 (1962), and cases cited ("doctrine of estoppel cannot stay the hand of a municipality in enforcing its zoning laws"). *Raia* v. *Board of Appeals of North Reading*, 4 Mass. App. Ct. 318, 321 (1976) (fact that foundation had been poured pursuant to a building permit "but in contravention of the applicable zoning ordinance" did not preclude the town from revoking the permit). The plaintiffs were thus required to obtain a waiver

---

[8]The record includes a notice announcing a public hearing of the conservation commission, to be held April 21, 1992, to hear plaintiffs' request for a waiver from the setback requirements of the wetlands by-law. The plaintiffs indicated at oral argument that the request was rejected by the commission.

[9]In fact, the order specifically notes that the plaintiff must still comply with all other applicable statutes, ordinances, by-laws or regulations.

from the wetlands by-law setback requirement before they could obtain an occupancy permit.

As to the zoning violation, the plaintiffs first argue that it was the conservation commission that was aggrieved by issuance of the plaintiffs' building permit, and thus it was the conservation commission, and not the plaintiffs, that had the burden to bring an administrative appeal under G. L. c. 40A. However, the conservation commission objected not to a violation of the minimum lot size required by the zoning by-law, but to a setback violation of the wetlands by-law. As already alluded to above (see note 7, *supra*), the avenues of appeal for violations of various by-laws and State laws are discrete. Thus, no appeal of a wetlands by-law violation could be made pursuant to c. 40A, which is limited to violations of zoning laws. Compare *P & D Service Co., Inc.* v. *Zoning Bd. of Appeals of Dedham*, 359 Mass. 96, 104 (1971) (zoning board of appeals had no jurisdiction to hear appeal of building permit revocation, where revocation was based on alleged violation of State Sanitary Code). Moreover, neither the town, nor any of its boards, has any reason to be aggrieved as the building commissioner has acted to enforce the zoning by-law by preventing the plaintiffs from occupying their building until they come into compliance with the by-law. It is only when the building commissioner refuses to enforce the town's by-laws, that the town becomes an aggrieved party. See, e.g., *Woburn* v. *McNutt Bros. Equip. Corp.*, 16 Mass. App. Ct. 236, 237 (1983); *Selectmen of Tewksbury* v. *Granfield*, 17 Mass. App. Ct. 1011 (1984).

The plaintiffs next argue that they were not required to pursue an administrative appeal because they were not given written notice of the zoning by-law violation as required by c. 40A, § 7. The writing requirement of § 7, however, pertains only to communications between the zoning enforcement officer and concerned third parties seeking enforcement of the zoning laws. It does not apply to persons in the plaintiffs' circumstances, who are allegedly in violation of the zoning laws.[10] Section 8, which does apply to aggrieved permit applicants such as the plaintiffs, affords them no relief. See

---

[10]Chapter 40A, § 7, provides in pertinent part, "If the officer . . . charged with enforcement of zoning ordinances or by-laws is requested in writing to enforce such ordinances or by-laws against any person allegedly in violation of the same, and such officer or board declines to act, he shall

*Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 326 (1964).[11] Under c. 40A, §§ 8, 15, applicants aggrieved by the denial of a permit have 30 days from the denial to appeal to the zoning board of appeals.[12] There is no evidence in the record that the plaintiffs mounted such an appeal. They have, therefore, waived their right to seek judicial review pursuant to c. 40A, § 17.[13] Nor have the plaintiffs shown that they come within the scope of cases where exceptions to the ordinary requirements for administrative exhaustion pertain. "As a general rule, where an administrative procedure is available, we require a party seeking declaratory relief first to exhaust the opportunities for an administrative remedy." *Space Bldg. Corp.* v. *Commissioner of Rev.*, 413 Mass. 445, 448 (1992), citing *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991), and *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 450 (1973). Exceptions to the exhaustion requirement are sometimes made in extraordinary circumstances, as when the administrative remedy is inadequate (e.g., the administrative board does not have jurisdiction to hear the plaintiff's complaint), or the issues in the case are of such public significance that the outcome will affect

notify, in writing, the party requesting such enforcement of any action or refusal to act, and the reasons therefor, within fourteen days of receipt of such request."

[11]The plaintiffs do not allege that they never received notice of the violation. They simply assert that they never received written notice.

[12]Chapter 40A, § 8, provides in pertinent part, "An appeal to the permit granting authority . . . may be taken by any person aggrieved by reason of his inability to obtain a permit . . . from any administrative officer under the provisions of this chapter . . . ."

Chapter 40A, § 15, provides in pertinent part, "Any appeal under section eight to a permit granting authority shall be taken within thirty days from the date of the order or decision which is being appealed . . . [by filing] a notice of appeal specifying the grounds thereof, with the city or town clerk . . . ."

[13]Chapter 40A, § 17, provides in pertinent part, "Any person aggrieved by a decision of the board of appeals . . . may appeal to the land court department, [or] the superior court department . . . . The complaint shall allege that the decision exceeds the authority of the board . . . and shall contain a prayer that the decision be annulled. There shall be attached to the complaint a copy of the decision appealed from, bearing the date of filing thereof . . . ."

It appears that plaintiffs have not attempted to seek a variance, and there is no applicable time limitation for such an application. See c. 40A, § 10.

numerous persons in addition to the plaintiffs, or where there is no dispute about the facts, and the issue involves merely a question of law. See *Space Bldg. Corp.*, 413 Mass. at 448; *Norfolk Elec., Inc.* v. *Fall River Hous. Authy.*, 417 Mass. 207, 210-211 (1994); *Goldlust* v. *Board of Appeals of N. Andover*, 27 Mass. App. Ct 1183, 1184 (1989). The matter before us falls into none of these categories.

Nor do the plaintiffs' claims fall within the narrow range of cases involving the "validity and extent" of zoning by-laws, where, in the event of a live controversy (admittedly present in the instant case), direct recourse to the courts is available either through c. 231A (Superior Court) or, even without a live controversy, see *Barron Chevrolet, Inc.* v. *Danvers*, 419 Mass. 404, 407 (1995); c. 240, § 14A, and G. L. c. 185, § 1(j $^{1}/_{2}$) (Land Court), without the need first to appeal to the zoning board of appeals. *Clark & Clark Hotel Corp.* v. *Building Inspector of Falmouth*, 20 Mass. App. Ct. 206, 208-209 (1985), and cases cited. See also *Banquer Realty Co.* v. *Acting Bldg. Commr. of Boston*, 389 Mass. 565, 570 (1983) (where issue was whether plaintiff's manufacturing plant was a use "as of right" or a "conditional use" under zoning code, plaintiff entitled to bring c. 240, § 14A, action in Land Court to challenge revocation of building permit without first appealing to zoning board of appeals). In contrast to *Banquer*, and cases of its nature, the thrust of the plaintiffs' argument in the instant case is that a prior permit (here, the DEP final order allowing construction of a septic system in the wetlands) entitles the plaintiffs to proceed without further review by local authorities. The gravamen of this argument concerns the effect of the permit, rather than any interpretation of the by-law. In such circumstances, exhaustion of administrative remedies is required. *Whitinsville Retirement Soc., Inc.* v. *Northbridge*, 394 Mass. 757, 762 (1985) (claim of exemption from zoning by-law by virtue of earlier special permit does not fall within c. 240, § 14A and c. 185, § 1[j $^{1}/_{2}$]).

Finally, even if the plaintiffs could somehow surmount these jurisdictional hurdles and we were to consider the plaintiffs' substantive claims, we would nonetheless conclude that the plaintiffs have failed to show a likelihood of success on the merits and are not, therefore, entitled to injunctive relief. See *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 87-88 (1984). As the moving party, the plaintiffs bore the

burden of demonstrating their entitlement to the occupancy permit. While they have, to be sure, presented a sorry tale (of maddening bureaucratic conduct), they have failed to show what, other than sympathy, might support their quest for an occupancy permit. It is plain that they have not shown legal entitlement to such a permit. In addition to resolving the conservation and zoning by-law violations, the plaintiffs were required to obtain sign-offs from a number of town officials before they could obtain an occupancy permit. The certificate of occupancy form indicates that the following approvals are required: "Plumbing Inspector," "Wiring Inspector," "Gas Inspector," "Fire Chief," "Agent of Board of Health," "Agent of Planning Board," "Highway Superintendent," "Agent of Conservation Commission," and "Building Official." With the exception of the plumbing and wiring inspectors, there is no evidence in the record that the plaintiffs obtained these requisite sign-offs. They have thus failed to demonstrate their entitlement to the occupancy permit. Given the sequence of events, however, the conservation commission and the board of appeal may wish to entertain renewed applications for relief from the two constraining by-laws.

For the reasons discussed, the Superior Court judge erred in enjoining the building commissioner to issue the plaintiffs an occupancy permit. For those same reasons, the Superior Court lacks jurisdiction to hear the full case on the merits. The plaintiffs' action shall be dismissed for lack of jurisdiction. The preliminary injunction is vacated.

*So ordered.*