CITY OF SOMERVILLE vs. SOMERVILLE MUNICIPAL
EMPLOYEES ASSOCIATION.

Middlesex. April 10, 2008. - May 22, 2008.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Public Policy. Arbitration,* Judicial review, Authority of arbitrator, Collective
bargaining. *Municipal Corporations,* Collective bargaining, Mayor.

In a Superior Court action brought by a municipality seeking to vacate an
arbitrator's award resulting from a grievance over the appointment by its
mayor of a nonunion member to the position of the city's director of
veterans' services, the judge erred in entering judgment on the pleadings
for the union, where the position was a creation of statute, G. L. c. 115,
§ 10, which granted exclusive appointment authority to the mayor, subject
only to the approval of the city council, and where the statute lacked any
indication that the Legislature intended that the choice of director of
veterans' services be open to the collective bargaining process (a process
that would materially conflict with the specific statutory power vested in
the mayor). [496-500]

CIVIL ACTION commenced in the Superior Court Department on
July 22, 2005.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion
for judgment on the pleadings.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Matthew J. Buckley,* Assistant City Solicitor, for the plaintiff.

*James F. Lamond* for the defendant.

GREANEY, J. A member of the Somerville Municipal Employees
Association (union) filed a grievance over the appointment, in
January, 2004, by the mayor of the city of Somerville (city), of
a nonunion member to the position of the city's director of
veterans' services. After an evidentiary hearing, an arbitrator
determined that the appointment violated the collective bargain-
ing agreement applicable to city employees; directed the mayor
to appoint the grievant to the position of director of veterans'

services; and ordered the city to reimburse the grievant for lost wages and benefits, with interest compounded quarterly at twelve per cent. The city filed an application in the Superior Court seeking to vacate the arbitration award, and the union filed a counterclaim requesting that the award be affirmed. A judge in the Superior Court entered judgment on the pleadings for the union, affirming the award. The Appeals Court affirmed the judgment. *Somerville* v. *Somerville Municipal Employees Ass'n*, 69 Mass. App. Ct. 583 (2007). We granted the city's application for further appellate review. We conclude that the explicit legislative directive of G. L. c. 115, § 10, that a city's director of veterans' services "shall be appointed . . . by the mayor, with the approval of the city council," precludes the challenged appointment from being a proper subject for collective bargaining or arbitration. Accordingly, we now reverse the judgment and order that the award be vacated.

1. The relevant background is as follows. The union represents two groups of city employees: unit A and unit B. Each group has its own collective bargaining agreement with the city. The unit A agreement generally covers department heads; the unit B agreement covers so-called "rank and file" employees. The city and the union agree that the position of director of veterans' services is a unit A position and that the relevant language in both collective bargaining agreements is essentially the same. (We shall refer to the unit B collective bargaining agreement, which is the one applicable to this case, as simply the collective bargaining agreement.)

Article VII of the collective bargaining agreement sets forth procedures required for making promotions and filling vacancies. Section (h)(2) of art. VII states:

> "In the case of a vacancy in any Unit A position for which no Unit A employee is selected, Unit B employees may apply and will be considered on the basis of the qualifications established for the position. In the event that any Unit B applicants and any non-Unit B applicants meet the qualifications(s) established for the [Unit A] position, and their respective qualification(s) are substantially equal, the [Unit A] position will be filled by the senior Unit B Employee among such applicants."

In October of 2003, the city posted the position of veterans' services director, listing the requirements and necessary qualifications for the job. Among candidates who applied for the job were Paul Nelson, a unit B city employee, and Frank Senesi, an elections commissioner for the city, who is not a member of the union. Both candidates are veterans.

After the city's mayor hired Senesi for the job, Nelson filed a grievance with the union, claiming that the city had violated art. VII of the collective bargaining agreement in the appointment of Senesi. The dispute proceeded to arbitration, pursuant to a provision of the collective bargaining agreement providing for final and binding arbitration of disputes arising under the agreement. The question before the arbitrator was: "Did the City of Somerville violate the Parties' Unit B Collective Bargaining Agreement by failing to appoint the Grievant, Paul Nelson,[1] to the position of Veterans' Services Director in or about January 2004: If so, what shall be the remedy?"

In a memorandum of decision and order, the arbitrator stated his opinion that one of the agreements made by the city in the collective bargaining agreement is to prefer union members over nonunion members with respect to union jobs. The arbitrator went on to reason as follows: Although the terms of the collective bargaining agreement permit the city to select a nonunion candidate for a vacant union position, the city must do so in a manner consistent with art. VII. When the choice for a unit A position is between a unit B and a nonunion candidate, it is the city's burden to establish, by objective evidence, that each candidate's qualifications are "head and shoulders" above those of any unit A candidates bypassed for the job. Then, should one candidate's qualifications be demonstrably superior to the other's, that candidate, whether unit B or nonunion, may be chosen. The arbitrator determined that, because the city had failed to establish that the qualifications of Senesi were demonstrably superior to Nelson's, who was also the senior candidate of the two, the city had violated art. VII(h)(2), when Senesi was appointed director of veterans' services. The award directed the city to appoint Nelson in his place.

---

[1]There were two grievants initially, but one withdrew his claim following the first day of arbitration hearings.

The city sought to vacate the award, pursuant to G. L. c. 150C, § 11 (*a*) (3), which provides that "the superior court shall vacate an award if . . . the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by [S]tate or [F]ederal law." The city argued that the arbitrator had no authority to rule on the appointment, because the mayor's authority to appoint a director of veterans' services, conferred by G. L. c. 115, § 10, is exclusive and nondelegable and, therefore, not subject to collective bargaining or arbitration. The union, in response, filed a counterclaim asking that the award be confirmed pursuant to G. L. c. 150C, § 10.

Considering the parties' cross motions on the pleadings, the judge concluded that, although the mayor's authority to appoint an individual to the position of veterans' services director is not an issue for collective bargaining, the procedure surrounding the appointment of an individual to any unit A position is an "ancillary matter" appropriate for collective bargaining, *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 179 (1997), which the city may, and did in this case, agree to arbitrate. We disagree with this conclusion and now proceed to explain why.

2. We have recognized a strong public policy favoring collective bargaining between public employers and employees over certain conditions and terms of employment. See, e.g., *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 761-762 (2003); *Worcester* v. *Labor Relations Comm'n*, 438 Mass. 177, 180-181 (2002). This policy is codified in the broad statutory language of G. L. c. 150E, § 6, providing that "[t]he employer and the exclusive representative . . . shall negotiate in good faith with respect to wages, hours, standards [of] productivity, and performance, and any other terms and conditions of employment" in keeping with the objective of creating a collective bargaining agreement. General Laws c. 150E, § 7 (*d*), further provides that, where there is a conflict between a statute and the parties' collective bargaining agreement, the collective bargaining agreement "shall prevail" if the statute is one that is enumerated therein. See *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Office & Professional Employees Int'l Union, Local 6*, 441 Mass. 620, 629 (2004).

General Laws c. 115,§ 10, however, is not among those statutes enumerated in § 7 (*d*), which the Legislature made subject to collective bargaining.

The narrow circumstances for vacating an arbitrator's award under G. L. c. 150C, § 11 (*a*), see *School Comm. of Hanover* v. *Hanover Teachers Ass'n*, 435 Mass. 736, 740 (2002), reflect an (arguably) equally strong policy favoring arbitration. See *Lyons* v. *School Comm. of Dedham*, 440 Mass. 74, 78 (2003); *School Comm. of Pittsfield* v. *United Educators of Pittsfield, supra* at 758. Whether an award is improper because an arbitrator exceeded his authority is determined on a case-by-case basis. See *id.* at 759, citing *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Ass'n/Mass. Community College Council*, 423 Mass. 23, 31-32 (1996). "[S]tatutes not specifically enumerated in § 7 (*d*) will prevail over contrary terms in collective bargaining agreements." *School Comm. of Natick* v. *Education Ass'n of Natick*, 423 Mass. 34, 39 (1996), quoting *National Ass'n of Gov't Employees* v. *Commonwealth*, 419 Mass. 448, 452, cert. denied, 515 U.S. 1161 (1995).

Our analysis begins with the presumption that the collective bargaining agreement compels the outcome directed by the award and ends with a determination whether that outcome materially conflicts with G. L. c. 115, § 10. See *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Office & Professional Employees Int'l Union, Local 6, supra*. See also *Fall River* v. *AFSCME Council 93, Local 3177*, 61 Mass. App. Ct. 404, 410-411 (2004); *Leominster* v. *International Bhd. of Police Officers, Local 338*, 33 Mass. App. Ct. 121, 124-125 (1992), citing *Rooney* v. *Yarmouth*, 410 Mass. 485, 493 n.4 (1991). We have found a conflict to be material when an arbitration award usurps a discretionary power granted by the Legislature to a public authority that, by statute, cannot be delegated to another. See, e.g., *School Comm. of Natick* v. *Education Ass'n of Natick, supra* at 39-41; *Massachusetts Coalition of Police, Local 165* v. *Northborough*, 416 Mass. 252, 255-256 (1993); *Massachusetts Bay Transp. Auth.* v. *Local 589, Amalgamated Transit Union*, 406 Mass. 36, 39-41 (1989). This is such a case.

The position at issue is a creation of statute. The Legislature

has expressly directed city mayors, in G. L. c. 115, § 10, as amended by St. 1972, c. 122, to establish and maintain a local department of veterans' services "for the purpose of furnishing such information, advice and assistance to veterans and their dependents . . . to enable them to procure benefits to which they are or may be entitled relative to employment, vocational or other educational opportunities, hospitalization, medical care, pensions, and other veterans' benefits." The Legislature also has specifically instructed that the director of the department, as well as any assistants or deputy directors, "shall be a veteran and shall be appointed in a city by the mayor, with the approval of the city council." *Id.* The statutory language is unambiguous. The Legislature has established one prerequisite to eligibility for the position of director of veterans' services — that the person be a veteran. Beyond that requirement, the authority to appoint a veteran to that position is granted to the mayor (subject to the approval of city council).

The union accepts this premise, as it must, but contends nevertheless that the statutory language reflects a legislative intent to impose only a general obligation on mayors to hire someone to deliver the legislatively specified services. The union argues that art. VII(h)(2) of the collective bargaining agreement does not require the mayor to appoint a specific candidate, but merely expresses the city's promise to give a union candidate preference over a nonunion candidate (should the two be "substantially equal"). Therefore, according to the union, art. VII(h)(2) does not "materially conflict" with the authority imposed on the mayor by G. L. c. 115, § 10. See, e.g., *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Office & Professional Employees Int'l Union, Local 6, supra.*

We do not find this interpretation of the statute persuasive. The practical effect of following the procedures set forth in art. VII(h)(2), in this case, dictates the candidate to be appointed and, in so doing, usurps the authority specifically conferred on a mayor by legislative directive, to appoint, with the approval of the city council, a director of veterans' services. Indeed, the union's position leaves nothing for the city council to approve. We, therefore, discern a material conflict between the specific statutory power vested in the mayor by G. L. c. 115, § 10, and

the terms of the collective bargaining agreement setting forth required procedures for filling vacancies in unit A positions.

The Appeals Court has stated that, "while an underlying decision may be reserved to the exclusive prerogative of the public employer . . . , the public employer may be required to arbitrate with respect to ancillary matters, such as procedures that the employer has agreed to follow prior to making the decision." *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 179 (1997). In question in the *Lynn* case was the authority of the city's fire chief to file an application for the retirement of a fire fighter, without first engaging in collective bargaining with the union, and while the fire fighter's application for an accidental disability pension was pending before the Contributory Retirement Appeal Board. See *id.* at 175. The Appeals Court carefully differentiated between the broad category of cases involving challenges to an arbitration award, in which the public employer is operating under statutory authority granting general management powers, not listed in § 7 (*d*), and a narrow category in which the governmental employer acts under a specific authorizing statute, also not listed in § 7 (*d*). See *id.* at 178-182. The Appeals Court explained: "In the range of cases where the governmental employer acts pursuant to broad, general management powers, the danger is presented, as pointed out in *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. [557,] 564-566 [(1983)], that to recognize the statutory authority as exclusive would substantially undermine the purpose of G. L. c. 150E, § 6, to provide for meaningful collective bargaining as a general rule with respect to compensation and other terms and conditions of employment. That danger simply is not present when the governmental employer acts pursuant to a specific, narrow statutory mandate." *Id.* at 182. The Appeals Court concluded that the fire chief's specific authority to act under G. L. c. 32, § 16 (1) (*a*), left "nothing to bargain about" and, therefore, was a matter of exclusive managerial prerogative not subject to collective bargaining. *Id.* at 184. We agree with what was said in the *Lynn* case and, moreover, find the reasoning there fully applicable to the circumstances before us. The mayor's specific authority granted by G. L. c. 115, § 10, leaves "nothing to bargain about" and, moreover, is undermined entirely should

the mayor be bound to the procedures set forth in art. VII(h)(2). We cannot view the challenged decision to hire Senesi an "ancillary matter" to the mayor's appointment power.[2]

In summary, the phrase "shall be appointed by" confers on the mayor the exclusive authority to decide which candidate shall serve as the director of veterans' service, subject only to the approval of the city council. Article VII(h)(2), as applied to this case, impermissibly infringes on this authority. Had the Legislature intended that the choice of director of veterans' services be open to the collective bargaining process, it easily could have included G. L. c. 115, § 10, in the statutes enumerated in G. L. c. 150E, § 7 (d). In the absence of such inclusion, the city could not agree to collective bargaining provisions that interfere with the specific legislative directive contained in G. L. c. 115, § 10. It follows that the arbitrator was without authority to direct the city to appoint Nelson to the position of director of veterans' services. See *Boston* v. *Boston Police Superior Officers Fed'n*, 52 Mass. App. Ct. 296, 299 (2001), quoting *Boston* v. *Boston Police Patrolmen's Ass'n*, 41 Mass. App. Ct. 260, 270 n.3 (1996) ("The fact that the city agreed to arbitrate the grievance is of no legal consequence if the issue is beyond the authority of the arbitrator").

3. The judgment of the Superior Court is reversed. A new judgment shall enter vacating the arbitrator's award.

*So ordered.*

---

[2]Examples of cases in which we concluded that management decisions made in the public sector pursuant to a general statutory authority involved ancillary matters that are subject to collective bargaining are *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Office & Professional Employees Int'l Union, Local 6*, 441 Mass. 620, 628-629 (2004) (Chief Justice may agree to follow procedures prior to making decisions under statutory authority to transfer employees); *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 764 (2003) (although principal has statutory authority to determine whom to hire, involuntary transfer of teacher to different school remained proper subject of collective bargaining); and *School Comm. of Newton* v. *Newton Sch. Custodians Ass'n, Local 454*, 438 Mass. 739, 748-749 (2003) (principal's agreement to consider certain criteria in making hiring decisions constituted only minimal intrusion on hiring discretion).