DEPARTMENT OF STATE POLICE *vs.* MASSACHUSETTS
ORGANIZATION OF STATE ENGINEERS AND SCIENTISTS.[1]

Suffolk. December 7, 2009. - April 2, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*State Police. Arbitration,* Arbitrable question, Enjoining arbitration. *Labor,*
Arbitration, Collective bargaining, Public employment, Discharge for
union activity. *Public Employment,* Collective bargaining, Termination.

A judge in the Superior Court properly allowed an application of the Depart-
ment of State Police (department) to permanently stay arbitration of a
dispute with an employee organization arising from the termination of the
employment of a chemist by the colonel of the department, where the
colonel's termination of the chemist could not legally be the subject of
arbitration, given the colonel's exclusive and nondelegable authority under
G. L. c. 22C, § 9, to remove from their positions "expert" employees, a
category that included chemists [455-457], and where this court recognized
no exception to this so-called nondelegability doctrine for cases, such as
the instant one, involving a claim of discrimination on the basis of union
membership and activity [457-460]; further, there was no merit to the
employee organization's arguments that arbitration was permissible as a
remedy for a procedural violation [460-461], as a contractual right from a
preceding agreement [461-462], or for cathartic value [462].

CIVIL ACTION commenced in the Superior Court Department on
July 25, 2008.

The case was heard by *Paul E. Troy,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Paul F. Kelly (James A.W. Shaw* with him) for the defendant.
*Julie B. Goldman,* Assistant Attorney General, for the plaintiff.
*Shelley B. Kroll, Joseph L. DeLorey, David B. Rome,* & *Kathe-*

[1]We acknowledge receipt of two amicus briefs: one filed by the National
Association of Government Employees and Service Employees International
Union; and the other filed by Massachusetts AFL-CIO; American Federation
of State, County, and Municipal Employees, Council 93, AFL-CIO; Service
Employees International Union, Local 509; and Service Employees International
Union, Local 888.

*rine D. Shea,* for Massachusetts AFL-CIO & others, amici curiae, submitted a brief.

*Lawrence D. Humphrey & Jean E. Zeiler,* for National Association of Government Employees, Service Employees International Union, amicus curiae, submitted a brief.

BOTSFORD, J. Pursuant to G. L. c. 150C, § 2 (*b*), a judge in the Superior Court permanently stayed arbitration of a dispute between the Department of State Police (department) and the Massachusetts Organization of State Engineers and Scientists (MOSES), acting on behalf of Robert E. Pino, a chemist employed by the department and a member of MOSES. MOSES appealed, and we granted its application for direct appellate review. It contends that a collective bargaining agreement between MOSES and the Commonwealth required the department to arbitrate MOSES's claims that the colonel of the State Police (colonel) terminated Pino without just cause and in retaliation for union activity. Agreeing that under G. L. c. 22C, § 9, the colonel had the exclusive and nondelegable authority to remove Pino, we affirm the judgment of the Superior Court.

*Background.* The record reflects the following facts. Pino was employed as a chemist in the department's criminal laboratory since 1984. As of 2007, Pino was classified as a "Chemist III" and was the system administrator for the department's "Combined DNA Index System" (CODIS). He was a member of MOSES and shop steward for the criminal laboratory during his entire employment with the department, and included within unit 9, a bargaining unit certified by the division of labor relations (division).[2]

On March 30, 2007, the department conducted a predisciplinary hearing concerning Pino's work performance, presided over by an agency hearing officer.[3] The hearing officer made findings of fact and a recommendation to the colonel. On April 13, 2007,

_____

[2]The Labor Relations Commission was renamed the division of labor relations. See G. L. c. 23, § 1A (*c*), as amended by St. 2007, c. 145, § 2. See also G. L. c. 23, § 9O, as appearing in St. 2007, c. 145, § 5.

[3]According to Pino's affidavit, submitted in support of MOSES's motion for reconsideration of the Superior Court judge's decision, the department alleged that Pino had held notifications of deoxyribonucleic acid (DNA) matches until the applicable statutes of limitations had run; had improperly conducted and reported the results of "familial" searches; and had reported DNA matches based on faulty information. Pino denies these allegations.

the colonel informed Pino by letter that he found "just cause" to terminate Pino's employment with the department under G. L. c. 22C, § 9, inserted by St. 1991, c. 412, § 22.[4] The letter stated, in relevant part:

> "Having received the findings and recommendations of [the hearing officer] and upon review of the same, together with an examination of all evidence submitted at the March 30, 2007 pre-disciplinary hearing, I find just cause to terminate your employment as a CODIS Administrator/ Chemist III for the Department . . . .

> "Additionally, I find your continued employment with the Department . . . to be contrary to the public interest and the mission of the Department of State Police. In accordance with [G. L. c.] 22C, § 9, I have determined that your removal is necessary for the operation of the Department and hereby remove and discharge you from your appointment pursuant to that statute."

At the time Pino received this letter, a collective bargaining agreement between MOSES and the Commonwealth (agreement), executed in 2005, governed the terms of Pino's employment with the department.[5] The agreement expressly superseded any prior collective bargaining agreements. It covered bargaining unit 9 employees in various Commonwealth agencies, including, but not limited to, the department. The agreement addresses union fees, antidiscrimination policy, schedules, leave, salaries, insurance contributions, promotions, layoffs, training, performance evaluations, arbitration of disciplinary action, and a grievance procedure.

Relevant here, art. 23A of the agreement details a four-step grievance procedure to resolve disputes that in its fourth step

---

[4]General Laws c. 22C, § 9, states: "The colonel may appoint, transfer and remove experts, clerks and other assistants as he may deem necessary for the operation of the department; provided, however, that all such actions shall be exempt from the provisions of [G. L. c. 31, the civil service statute]; and provided, further, that such positions shall be subject to the provisions of [G. L. c. 30, §§ 45, 46, and 46C (job classifications and pay scales)]."

[5]The collective bargaining agreement (agreement) ran from July 1, 2003, through June 30, 2006, but provided that it would remain in full force and effect until a successor agreement was executed. We infer from the record that the agreement was in effect at all relevant times in 2007.

provides for arbitration of grievances that the parties have not resolved under the first three steps. Section 23A.4 limits the scope of arbitration, providing that "[t]he arbitrator shall have no power to add to, subtract from, or modify any provision of this Agreement or to issue any decision or award inconsistent with applicable law." Additionally, art. 28, entitled "saving clause," states that "[i]n the event that any Article, Section or portion . . . is found to be invalid . . . then such specific Article, Section or portion shall be unenforceable . . . ."

On April 19, 2007, MOSES filed a grievance on Pino's behalf, claiming that the department had terminated his employment without just cause in violation of § 23.1 of the agreement, which provides that no employee with six or more consecutive months of service "shall be discharged, suspended, or demoted for disciplinary reasons or given a warning or reprimand without just cause." Further, MOSES alleged that the department terminated Pino's employment in retaliation for his union activity in violation of § 6.6 of the agreement, which reads: "There shall be no discrimination by the Employer or its Agent against any employee because of his/her activity or membership in MOSES." MOSES sought the following remedy: "Reinstate grievant. Cease and desist retaliatory, discriminatory conduct. Make grievant whole. All lesser included remedies are incorporated herein."

The department argued to the arbitrator that G. L. c. 22C, § 9 (see note 4, *supra*), confers on the colonel nondelegable managerial authority to remove civilian employees, including Pino, and the arbitration of the grievance was therefore outside the arbitrator's authority. MOSES disagreed. It contended that the grievance was arbitrable because, among other reasons, Pino retained collective bargaining rights when he and other department of public safety employees were reorganized into the department, pursuant to St. 1991, c. 412, § 1 and § 136.[6]

On July 14, 2008, the arbitrator issued a prehearing ruling in which he (1) declined to address whether St. 1991, c. 412, § 136

---

[6]The Legislature consolidated the Metropolitan District Commission police, the division of the State police in the Executive Office of Public Safety, the capitol police, and the division of law enforcement of the registry of motor vehicles into the Department of State Police. St. 1991, c. 412, § 1.

(see note 20, *infra*), conflicted with G. L. c. 22C, § 9, stating that "[r]econciling conflicting statutes . . . is reserved exclusively to the judiciary"; and (2) determined that "whether the [c]olonel's statutory rights under [G. L. c. 22C, § 9,] are non-delegable rights of management that may not be abrogated by a collective bargaining agreement is a legal question for the courts." Despite finding these two issues outside his jurisdiction, the arbitrator concluded that the question whether the colonel had just cause to terminate Pino's employment was arbitrable nonetheless, because the colonel's authority to take that action stemmed from § 23.1 of the agreement in addition to G. L. c. 22C, § 9, and § 23.1 required just cause for Pino's discharge.[7]

On July 25, 2008, the department filed in the Superior Court an application for a permanent stay of arbitration pursuant to G. L. c. 150C, § 2 (*b*). MOSES opposed the application. On September 9, 2008, after a hearing, the judge granted the stay, concluding that because Pino was an "expert" within the meaning of G. L. c. 22C, § 9, the agreement could not supersede the colonel's nondelegable right of management granted by that statute, and "an arbitrator could not issue an award which would interfere with this explicit prerogative." The judge rejected MOSES's contentions that its grievance sought remedies besides reinstatement and that arbitration was necessary to address "procedural standards," finding that MOSES had not alleged that the department had violated any particular procedures. The judge observed that MOSES had pointed to § 6.6 of the agreement, the provision barring antiunion discrimination, but determined that MOSES had cited "no evidence of discrimination or retaliation based on Pino's union membership or activity."

MOSES moved for reconsideration of the judge's order pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). In February, 2009, the judge denied the motion. In his accompanying decision, the judge addressed MOSES's alternative remedies argument. He noted that MOSES had raised factual allegations of antiunion discrimination in the Pino affidavit supporting its motion for reconsideration, but he concluded that even in light of the new allegations, an arbitrator still could not award any lawful

---

[7]The arbitrator did not address MOSES's claim of antiunion discrimination in his prehearing ruling.

relief without interfering with the colonel's nondelegable managerial prerogative set out in G. L. c. 22C, § 9.

*Discussion.* General Laws c. 150C, § 2 (*b*), authorizes a judge in the Superior Court to "stay an arbitration proceeding commenced or threatened" if the judge finds that two conditions are met: (1) "the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration"; and (2) "disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration." As to the statute's first condition, "we regard an agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration as equivalent to the absence of a controversy covered by the provision for arbitration." *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Ass'n*, 372 Mass. 116, 119 (1977). See *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Ass'n*, 375 Mass. 522, 526-527 & n.5 (1978). Thus, the first issue to consider is whether the colonel's termination of Pino — the basis of the dispute MOSES seeks to arbitrate — legally could be the subject of arbitration.[8]

General Laws c. 22C, § 9 (see note 4, *supra*), authorizes the colonel to "appoint, transfer and remove experts, clerks and other assistants as he may deem necessary for the operation of the department." The import of this language is plainly to confer on the colonel exclusive managerial authority over the appointment, transfer, and removal of any person employed in one of the specified positions, authority that cannot be delegated to an arbitrator under a collective bargaining agreement. See, e.g., *Leominster* v. *International Bhd. of Police Officers, Local 338*, 33 Mass. App. Ct. 121, 125-128 (1992) (arbitrator exceeded authority in ruling that police officer's discharge at end of probationary period was arbitrable issue requiring city to prove just cause, where G. L. c. 31, § 34, vested discretionary authority in city to dismiss probationary police officer if work was not "satisfactory to [city]").[9]

---

[8]The parties do not address whether the second condition of G. L. c. 150C, § 2 (*b*) (2), which looks to the provisions of the particular collective bargaining agreement, was met in this case. We therefore do not consider the second condition any further but assume — as the parties and the judge below appear to have — that it was satisfied.

[9]See also *School Comm. of Natick* v. *Education Ass'n of Natick*, 423 Mass. 34, 38-41 (1996) (*Natick*) (superintendent's decision not to reappoint grievant

MOSES briefly argues that G. L. c. 22C, § 9, does not apply in this case because as a Chemist III, Pino was an "other employee[]" governed by G. L. c. 22C, § 10, rather than an "expert" covered by § 9. The contention lacks merit. As the judge concluded, c. 22C, § 10, applies to the uniformed branch of State police officers, while § 9 applies to civilian employees of the department, such as Pino. Aside from one reference to "other employees" in the first paragraph of § 10, all five paragraphs of the section concern the appointment and conditions of employment of the uniformed officers of the State police.[10] Moreover, the record offers no indication that the Governor authorized Pino's appointment, as the first paragraph of § 10 would seem to require if Pino were an "other" employee within the scope of that section. The explicit use of the term "expert"

as coach not subject to arbitration; collective bargaining agreement could not abrogate provision in G. L. c. 71, § 47A, vesting exclusive appointment authority in superintendent); *Massachusetts Coalition of Police, Local 165* v. *Northborough*, 416 Mass. 252, 254 (1993) (*Massachusetts Coalition of Police*) (G. L. c. 41, § 97A, giving town selectmen power to appoint such police officers "as they deem necessary" for terms of fixed duration established nondelegable managerial prerogative in selectmen to decide not to reappoint particular officer). Cf. *Somerville* v. *Somerville Mun. Employees Ass'n*, 451 Mass. 493, 500 (2008) (*Somerville*) (arbitrator was without power to direct city to appoint grievant as director of veterans' services in light of statute vesting specific authority in city's mayor to appoint director; arbitrator's award vacated); *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Ass'n*, 375 Mass. 522, 526-530 (1978) (*Berkshire Hills*) (stay of arbitration under G. L. c. 150C, § 2 [b], properly granted where appointment of school principal was within nondelegable management authority of school committee and not proper subject of arbitration).

[10]The first paragraph of G. L. c. 22C, § 10, states in part:

"Whenever the governor shall deem it necessary to provide more effectively for the protection of persons and property and for the maintenance of law and order in the commonwealth, he may authorize, in writing, the colonel to make appointments to the department of state police, together with such other employees as the governor may deem necessary for the proper administration thereof. The appointment of the officers herein provided for shall be by enlistment and such appointees shall be exempt from the requirements of [G. L. c. 31]; provided, however, that the classification of such positions shall be subject to the provisions of [G. L. c. 30, § 45]. . . . The colonel may, subject to the provisions of this chapter and of [G. L. c. 150E], make rules and regulations for the force, including matters pertaining to the discipline, organization, government, training, compensation, equipment, rank structure, and means of swift transportation . . . ."

in § 9 also indicates that § 9 is intended to cover employees with specialized training such as chemists.

In sum, because we conclude that G. L. c. 22C, § 9, applies to Pino, and that it grants the colonel exclusive and nondelegable authority to appoint and remove civilian "experts" in the department, it follows that Pino's removal from his position as a Chemist III was not legally arbitrable. Section 23.1 of the agreement, the provision granting employees "just cause" protections after six months, conflicts with the colonel's statutory prerogative.[11]

MOSES argues that even if G. L. c. 22C, § 9, confers exclusive managerial authority on the colonel that cannot be delegated, under the exception to the nondelegability doctrine this court recognized in *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. 642 (1981) (*Flight*), MOSES's claim of discrimination based on union activity remains arbitrable.[12]

In *Flight*, this court confirmed an arbitrator's award that determined a school committee had violated a collective bargaining agreement by failing to promote the grievant teacher because of her gender, and that directed the school committee to promote the teacher with back pay. *Id.* at 643-644. In response to the argument that an award compelling the school committee to promote the grievant would violate the nondelegability doctrine, we con-

---

[11]In determining that a particular statute grants a public officer or public body nondelegable managerial authority that is inconsistent with arbitration under a public employee collective bargaining agreement, we have often pointed to the fact that the statute in question was not listed under G. L. c. 150E, § 7 (*d*) ("If a collective bargaining agreement . . . contains a conflict between matters which are within the scope of negotiations pursuant to [c. 150E, § 6,] and . . . any of the following statutory provisions . . . the terms of the collective bargaining agreement shall prevail"). See, e.g., *Somerville*, 451 Mass. at 500; *Natick*, 423 Mass. at 39; *Berkshire Hills*, 375 Mass. at 527. Similarly, in this case, G. L. c. 22C, § 9, is not listed in G. L. c. 150E, § 7 (*d*), as one of the statutes over which a collective bargaining agreement will prevail.

[12]The department argues that MOSES waived this argument by raising it only in its motion for reconsideration under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), the denial from which it did not appeal. The record indicates, however, that MOSES alleged retaliatory antiunion discrimination in its grievance, and appears at least to have made reference to this allegation in its opposition to the motion to stay filed in the Superior Court. In any event, the judge appears to have considered the merits of the claim, determining that MOSES had cited "no evidence of discrimination or retaliation based on Pino's union membership or activity." We do not treat MOSES's claim as waived.

cluded that the case called for "an exception" to the doctrine, referencing a case "where we suggested an exception if committee action was 'a pretense or device actuated by personal hostility,' "[13] and also citing a decision by the Court of Appeals of New York where an exception to the doctrine was recognized if tenure was refused "for constitutionally impermissible reasons or in violation of statutory proscriptions."[14] *Id.* at 644. We noted that the collective bargaining agreement at issue "provided explicitly that appointments would be made without regard to sex," *id.* at 643, and that "[d]enial of promotion to a public employee because of her sex is constitutionally impermissible and violates statutory proscriptions . . . ." *Id.* at 644. We then stated that a "[d]ecision by an arbitrator in such a case is no more intrusive than [a] decision by an independent commission, and does not unreasonably trespass on the managerial authority of the employing agency." *Id.*

MOSES is correct that similar to the treatment of gender discrimination in the agreement discussed in *Flight*, § 6.6 of MOSES's agreement with the Commonwealth expressly prohibits discrimination because of union activity or membership. Also similar to *Flight*, there is a statutory (but not constitutional) proscription against this type of discrimination. See G. L. c. 150E, §§ 10 (*a*), 11. Nevertheless, cases decided since *Flight* suggest that the exception we made to the nondelegability doctrine in that case is a very narrow one, and does not apply where the claim is one of discrimination on account of union activity.

In *Massachusetts Coalition of Police, Local 165* v. *Northborough*, 416 Mass. 252 (1993) (*Massachusetts Coalition of Police*), the union claimed that the town's decision not to reappoint its member as a police officer was "the product of discrimination on account of [the officer's] union activities," in violation of a collective bargaining agreement's provision expressly barring such discrimination. *Id.* at 257. After holding that the town's statutory authority to appoint police officers was nondelegable and that the matter was, therefore, not arbitrable, the court in

---

[13]*School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689 (1976), was the case cited in *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. 642, 644 (1981) (*Flight*).

[14]*Cohoes City Sch. Dist.* v. *Cohoes Teachers Ass'n*, 40 N.Y.2d 774, 777 (1976). See *Flight, supra.*

dictum rejected the union's discrimination claim, stating that, even if the claim were not waived, "we are satisfied that [the discrimination claim] must fail . . . because it appears that no lawful relief could be granted without conflicting with the town's nondelegable managerial prerogative." *Id.*[15] Similarly, in *Sheriff of Middlesex County* v. *International Bhd. of Correctional Officers, Local R1-193*, 62 Mass. App. Ct. 830 (2005), the Appeals Court rejected a union's contention that *Flight* excepted from the nondelegability doctrine — and therefore preserved for arbitration — the union's claim that its member was not reappointed in violation of the collective bargaining agreement's provision barring discrimination based on union activity. *Id.* at 833-834. Citing *Massachusetts Coalition of Police, supra,* the court determined that the *Flight* exception was not triggered where the discrimination claim was based on union membership and not membership in a constitutionally protected category such as gender or race. *Id.* at 834.

We follow the lead of these cases. Accordingly, we conclude that *Flight's* restricted exception to the nondelegability doctrine does not cover MOSES's discrimination claim based on Pino's union membership and activities.

MOSES also relies on our decision in *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n,* 386 Mass. 414, 423 n.10 (1982) (*Southern Worcester*), as supporting the position that an arbitrator has authority to order reinstatement if the arbitrator determines the employee was discharged for union activity. The *Southern Worcester* case, however, concerned the statutory authority of the Labor Relations Commission (now division of labor relations, see note 2, *supra*) to remedy prohibited labor practices under G. L. c. 150E, §§ 10 (*a*) & 11[16];

---

[15]The court in the *Massachusetts Coalition of Police* case did not discuss or cite to the *Flight* case.

[16]General Laws c. 150E, § 10 (*a*), states, in relevant part: "It shall be a prohibited practice for a public employer or its designated representative to: . . . (3) Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization." General Laws c. 150E, § 11, as appearing in St. 2007, c. 145, § 7 (*d*), authorizes a division of labor relations hearing officer who has determined that a practice prohibited by § 10 has been committed to reinstate an employee, with or without back pay.

the case was not concerned with the power of an arbitrator acting pursuant to a public employee collective bargaining agreement.[17] There does not appear to be any reason that MOSES could not have sought relief under these statutes from the division for any discrimination that, in MOSES's view, motivated the colonel's termination decision in this case. See *Massachusetts Coalition of Police*, 416 Mass. at 257 & n.1 (holding decision not to reappoint officer inarbitrable because "no lawful relief could be granted [under arbitration clause in collective bargaining agreement] without conflicting with the town's nondelegable managerial prerogative," but noting that "a union charge of prohibited practice focused on discrimination and retaliation . . . in connection with union activity was pending before the Labor Relations Commission").

MOSES also asserts that an arbitrator may remedy procedural violations without intruding on a public employer's exclusive management authority, and could have done so in this case. Accordingly, it contends, the stay of arbitration was in error. A public employer with nondelegable managerial authority "may be required to arbitrate with respect to ancillary matters, such as procedures that the employer has agreed to follow prior to making the decision" at issue. *Somerville* v. *Somerville Mun. Employees Ass'n*, 451 Mass. 493, 499 (2008), quoting *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 179 (1997). However, as the judge pointed out, MOSES has not alleged what, if any, specific procedures the department failed to follow. See *Sheriff of Middlesex County* v. *International Bhd. of Correctional Officers, Local R1-193*, 62 Mass. App. Ct. at 835 ("Claiming a violation

---

[17]We concluded in *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n*, 386 Mass. 414 (1982), that under G. L. c. 150E, §§ 10 and 11, the Labor Relations Commission had the authority to order the reinstatement of a teacher, even if reinstatement resulted in an award of tenure, if the school district had discriminated against her for participating in union activity. *Id.* at 422-423 & n.10. In response to the district's argument that only a district or a school committee can grant tenure, and that allowing the Labor Relations Commission to do so violated the nondelegability doctrine, we said, "[I]n this case, the school [district] has not attempted to delegate its authority over tenure to the commission. *Rather, the Legislature has limited the power of a school [district or] committee to deny tenure.* We therefore conclude that the nondelegability doctrine . . . does not apply to this case." (Emphasis added.) *Id.* at 423.

456 Mass. 450 (2010)                                        461

Department of State Police *v.* Massachusetts Organization of State Engineers and Scientists.

of a general nondiscrimination provision is insufficient to find a procedural basis to reverse the stay of arbitration"). Moreover, the nature of the dispute in this case precludes any remedy other than reinstatement. See *Massachusetts Coalition of Police,* 416 Mass. at 256 (finding no arbitrable dispute where "arbitrator lawfully could neither order [officer's] reappointment nor provide a form of relief that might reasonably promote or advance the union's goal that [he] be reappointed").[18] See also *School Comm. of Natick* v. *Education Ass'n of Natick,* 423 Mass. 34, 40 (1996). Cf. *Somerville* v. *Somerville Mun. Employees Ass'n,* 451 Mass. at 499, quoting *Lynn* v. *Labor Relations Comm'n, supra* at 184 ("mayor's specific authority granted by G. L. c. 115, § 10, leaves 'nothing to bargain about' ").

We also reject MOSES's claim that Pino retains contractual rights from before the 1991 consolidation of law enforcement agencies,[19] including a "just cause" standard in a then-applicable collective bargaining agreement. Section 25.4 of the current agreement states: "Any prior agreement covering employees in Bargaining Unit 9 *shall be terminated upon the effective date of this Agreement and shall be superseded by this Agreement*"

---

[18]In *Massachusetts Coalition of Police,* 416 Mass. at 256, we explained:

> "[T]his case is different from cases such as *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121 (1977), *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teachers Ass'n,* [372 Mass. 116 (1977)], and *School Comm. of Danvers* v. *Tyman,* [372 Mass. 106 (1977)]. In those cases, the court held that, although decisions concerning whether to grant tenure to teachers are nondelegable, and therefore nonarbitrable, issues concerning the procedure to be followed in making such tenure decisions are arbitrable. In those cases, the procedure in issue was reasonably related to the hiring decision. Here, however, an order requiring a hearing to determine whether there was just cause for discharge would have little or no bearing on whether, from the town's point of view, reappointment was indicated. Such an order would not constitute 'relief' in any realistic sense."

[19]Statute 1991, c. 412, § 136, provides: "Any duly existing contract, lease, or obligation of the division of capitol police, the division of metropolitan district commission police, the division of state police or the division of law enforcement in the registry of motor vehicles or any bureau, unit officer or employee thereof which shall be consolidated pursuant to the provisions of this act which are in force immediately prior to the effective date of this act [July 1, 1992,] shall be deemed to be the obligation of the department of state police."

(emphasis added). This language leaves no question that the current agreement's terms, and only its terms, apply.[20]

Finally, we decline MOSES's request to allow arbitration for cathartic value, as doing so would undermine the colonel's managerial discretion under G. L. c. 22C, § 9.

*Conclusion.* The Superior Court judge properly allowed the department's application permanently to stay arbitration.

*Judgment affirmed.*

---

[20]We similarly reject MOSES's argument that Pino had a right to arbitration of his claim for name-clearing purposes, even if the arbitrator could award no other remedy. Any right Pino may have to a "name-clearing" hearing is "independent of his termination" and not at issue here. *Police Comm'r of Boston* v. *Cecil,* 431 Mass. 410, 416 (2000). Moreover, it appears MOSES raises this argument for the first time on appeal, as the judge did not address it in his original decision or his decision on the motion for reconsideration.